James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, BAIN, GILFILLAN,
 CECCHI, STEWART & OLSTEIN
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Jeffrey A. Leon
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Jonathan Shub
Scott Alan George
SEEGER WEISS
1515 Market Street
Suite 1380
Philadelphia, Pennsylvania 19102
(215) 564-2300

Jim S. Calton, Jr.
CALTON & CALTON
Post Office Box 895
Eufaula, Alabama  36072-0895
(334) 687-3563

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTOINE E. CUBILLO, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendant. | Civil Action No.<br><br><br>**CLASS ACTION COMPLAINT**<br>**and DEMAND FOR JURY TRIAL** |

Plaintiff Antoine E. Cubillo ("Cubillo" or "Plaintiff") individually and on behalf of all others similarly situated, alleges by way of Complaint against defendant Samsung Electronics America, Inc. ("Samsung" or "Defendant"), upon personal knowledge as to himself, his belief and his own acts, and to all other matters upon information and belief, based upon, *inter alia*, the investigation made by his attorneys, as follows:

## INTRODUCTION

1.      Plaintiff and the Class purchased Samsung Digital Light Projection ("DLP") Televisions (hereinafter "Televisions"), all of which were delivered by Samsung with an inherent defect in the screen of the television referred to herein as the "White Dot Defect".  This defect, which is present upon delivery and manifests itself over time, renders the Television unsuitable for its principal and intended purpose.  The Televisions progressively fill with white dots and are unwatchable.  At late stages, the television screen appears as a starry night:



2.      This defect does not become visible under after the warranty period expires, and renders the Televisions useless.  Samsung, while aware of the defect and its cause (defective chip), refuses to fix the problem.  The Television can only be fixed by replacing the defective

chip with a new chip, which costs $150 for the chip, and over $250 for labor, which Samsung refuses to do.

3.     Defendant knew or should have known this premature failure would damage the class.  Plaintiff brings this suit to redress its damages and those of Class members.  Specifically, Plaintiff alleges a violation of the consumer fraud act of New Jersey (or, alternatively, those of a sub-class of States), and unjust enrichment.

## **PARTIES**

4.     Plaintiff Antoine E. Cubillo ("Plaintiff" or "Cubillo") is a citizen of California residing at 860 Meridian Bay Lane, Unit 340, Foster City, San Mateo County, California.  Mr. Cubillo purchased a Samsung HL-S4266WX/XAA Digital Light Processing television, which now manifests the White Dot Defect.

5.     Defendant Samsung Electronics America, Inc. ("Defendant" or "Samsung") is a New York corporation with its principal place of business at 105 Challenger Road, Ridgefield, New Jersey.

6.     Whenever in this Complaint reference is made to any act or omission of a corporate defendant, or other entity, such allegations shall be deemed to mean that the directors, officers, agents, employees, distributors, partners, contractors, third-party sales agencies or representatives of said corporate defendant, partnership or other entity, did, authorized or commanded such act or omission while actively engaged in the management, operation, control or representation of the affairs of said corporate defendant, partnership or entity, and while acting within the course and scope of their agency, distributorship, contract, employment, representation and capacity.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because at least one member of the putative Class is a citizen of a State other than the citizenship of New Jersey, there are more than 100 Class Members, and the damages suffered and sought to be recovered herein total, in the aggregate, in excess of $5,000,000, exclusive of interest and costs.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because Defendant is principally based in this District, and the acts and/or omissions giving rise to Plaintiff's claims occurred in this District and Defendant has had continuous and systematic contacts in this District by actively doing business here.

## DEFENDANT'S COURSE OF CONDUCT

9.      Defendant designs, manufactures, and sells several lines of high definition digital televisions across the United States, including LED, LCD, plasma, and projection televisions.

10.     Unknown to Plaintiff and Class, Defendant's projection televisions (hereinafter "Televisions"), which are at issue in this complaint, are delivered with a defective piece of hardware that malfunctions after the warranty period expires, which renders the Televisions useless.  This defect, referred to as the "White Dot Defect", causes the fitness of the Television screen to degrade over time.

11.     These Televisions, because of their cutting-edge technology, come with a premium price tag and retail between several hundred and several thousands of dollars, depending on the particular model.

4

12.     These Televisions produce high definition images using "Digital Light Processing" ("DLP") technology.  DLP technology is powered by a "Digital Micromirror Device" ("DMD") that generates images by manipulating over 1.3 million micromirrors, each of which reflect light onto the screen, creating an incredibly vibrant and high resolution image. This light is filtered through a color wheel that rotates 120 times per second.  The mirrors, which turn on or off several thousand times per second, provide the intensity necessary to produce the desired color.

13.     A circuit board (referred to as a "DMD board") contains a "DLP chip" that manipulates the aforementioned micromirrors.  On information and belief, the DLP chip, which is manufactured by Texas Instruments, is defective in that, over time, it fails to properly manipulate the micromirrors, which instead of transmitting the appropriate color from the color wheel, simply transmit a white color.  This defect affects a few micromirrors at first, but the failure grows exponentially, so while the customer will at first see only a handful of white dots (*i.e.* one to ten), within days and weeks the screen is covered with them, until large swaths of the screen are entirely white.

14.     There is currently no permanent fix for this problem *other than* a new replacement chip, which requires disassembling and reassembling the Television.  Individuals who contact Samsung to complain about the problem must purchase a replacement DLP chip and pay out of pocket.  This DLP chip, part number "4719 00 1981", costs $150.  Labor to install the chip will vary geographically, but typically is $250 or more, as the technician must disassemble the Television, remove the defective chip, insert the replacement chip, and reassemble the Television.

15.    This defect has recently been widely discussed on the Internet, including Facebook, where a group dedicated to discussing the problem was formed ("Samsung DLP 'white dot' Group"), and on the website www.cnet.com ("CNET"), which is dedicated to reviewing technology and electronics products.   CNET has several discussion groups where readers can compare notes on products; one such discussion group is dedicated to Samsung products – "Samsung Forum."

16.    On September 4, 2009, a representative from Samsung created a thread on the Samsung Forum addressing the White Dot Defect.  In this thread, titled "DLP WHITE DOTS? Read here - LIMITED TIME", an individual identified only as "Samsung_HD_Tech"[1] announced that he was authorized to "accept up to 50 people" who have experienced the aforementioned "white dot problem", "to have it inspected and repaired for free.  Regardless of warranty status, age of the unit, or past denial."  (Screen captures of the offer and all follow-up comments are attached as Exhibit A.[2])  The offer is reprinted in its entirety below:

> Forum members,
>
> In response to several complaints here with regards to some instances of Samsung DLP units having a "white dot problem",

---

[1]    According to his user profile on the CNet site, Samsung_HD_Tech is an eight-year employee of Samsung named Anthony:  "Hi there. My name is Anthony, and I've been with Samsung for over 8 years. We're proud to be part of this forum and look forward to helping out any way we can. I've been a computer enthusiast for 20 years, and a consumer electronics enthusiast for 15 years. In my time with Samsung, I've trained people who train people, and have supported a wide range of products, including Consumer Electronics[.]"  See Exhibit B, a screen capture his profile (http://www.cnet.com/profile/ Samsung_HD_Tech/?tag=forums06%3bposts) taken on September 24, 2009.

[2]    Exhibit A reflects all posts made before September 24, 2009.   The offer and any subsequent postings can be read online at http://forums.cnet.com/5208-4_102-0.html?threadID=357688. Whereas there were 71 posts on September 24, as of October 28, 2009, there are now *336 posts*.

I've been looking for ways to escalate the issue to those who have the ability to make a difference. We've been authorized to accept up to 50 people** who step forward with the problem to have it inspected and repaired for free. Regardless of warranty status, age of the unit, or past denial. If you have white dots or a screen picture that looks like this:

Example:
http://i397.photobucket.com/albums/pp60/samsung_hd_tech/white dot.jpg

Please send the following information to an email account that I've set up for just this purpose. One of the product specialists will be compiling the information and assisting with setting up the service for your unit.

**This is NOT for ANY OTHER ISSUE besides non-moving WHITE DOTS.** I'm sorry if you have a different issue with a DLP set (turns off, lamp is bad, noise, etc) but submitting a non-white-dot issue hurts the program and the people affected. And if a different symptom is discovered than white dots, it will not be repaired. If you have a symptom other than this, please call 800-SAMSUNG and have the unit inspected.

**Please do not post ANY personal information in the forums.**

-C|Net User Name (if applicable)
-First and Last Name
-A phone number (preferably cell)
-Transaction number (if you don't have one, call 800-SAMSUNG to get one - mention CNET or "the forum" as they should be aware and be able to give out a transaction number for the call. Explain the problem so they can log the issue)
-Model number, Serial number, and Version number. This can be found on the right side of the TV.
Example:
http://i397.photobucket.com/albums/pp60/samsung_hd_tech/Mode lcode.jpg
-A clear digital picture showing your problem.


**CNet users with post history will get first priority. Submissions with pictures also get priority. Then new C|Net Users, then "all others". I'm sorry if this sounds preferential, but these are the

people who have interacted with us to inform us of the issue, and some of which I have attempted to assist. That's my decision for the benefit of the forum community. That said, we do want participation, as the more issues that are brought forward allows us to focus on this issue. I figure this information will be shared outside of the CNet forum, and I don't discourage that, though **not everybody who submits may get served in this initial exploration of the issue.**

U.S. Customers only.

Emails not pertaining to this issue will be deleted, please ask your questions in the forums.

We reserve the right to stop, modify or change this program at any time.

Best,

--HDTech

(emphases in original).

17.    Interest in this special "extended warranty" option was strong, as the initial post received 71 responses, most from Samsung customers who experienced this problem.  Less than two weeks later, at 3:07 PM on September 16, 2009, Samsung_HD_Tech announced that the offer was closed:

**Number of submissions reached**

by Samsung_HD_Tech - 9/16/09 3:07 PM In reply to: DLP WHITE DOTS? Read here - LIMITED TIME by Samsung_HD_Tech

Effective immediately, we have reached the limit of submissions we can take, which is actually slightly over 50.

Any submissions after this will not be allowed, unless you're sending in a picture.

I appreciate the participation. We will be getting in contact with you shortly.

Submissions posted afterwards will not be honored, but please be

8

patient with us while we investiagate the issue.

--HDTech

(emphases in original).

18.     Results of this limited extended warranty program are unknown at this time.

**NAMED PLAINTIFF'S ALLEGATIONS**

19.     Plaintiff Cubillo purchased a Samsung DLP television, model code HL-S4266WX/XAA, on February 3, 2007, the Best Buy in San Carlos, California, for $989.99, plus tax.  See Exhibit C, Receipt of Purchase.  He purchased this television for home use.

20.     On or around September 21, 2009, Plaintiff began to notice white dots appearing on his Television screen first noticed white dots on his television screen, as seen below:



21.     Plaintiff Cubillo subsequently contacted Samsung's Executive Customer Service and informed them of the problem.  On or around September 29, 2009, Plaintiff faxed Samsung his receipt of purchase.  Samsung informed him that they would not repair the problem, and closed his complaint file.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action on its own behalf and as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following proposed "Class" or "Class Members":

> All persons or entities who have purchased a Samsung DLP television unit, including, but not limited to, models HL-S4266W, HL-S4666W, HL-S5066W, HL-S5666W, and HL-S6166W.
>
> Alternative Class:
>
> All persons or entities in California, Florida, Illinois, Michigan, Missouri, New Jersey, New York and Washington who have purchased a Samsung Series DLP television unit including, but not limited to, models HL-S4266W, HL-S4666W, HL-S5066W, HL-S5666W, and HL-S6166W;
>
> Alternative Sub-Class:
>
> All persons or entities who have purchased a Samsung DLP television unit that currently manifests "White Dot Defect," including, but not limited to, models HL-S4266W, HL-S4666W, HL-S5066W, HL-S5666W, and HL-S6166W

Excluded from the Class are:  Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case and his, her or their immediate family, and the attorneys in this case.

23.   <u>Numerosity</u>:   The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable.   While the exact number and identities of members of the Class are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes and therefore avers that there are thousands of Class Members.

24.   <u>Commonality</u>:   Plaintiff and Class Members' claims derive from a common core of salient facts, and share many of the same legal claims.   There are questions of fact *or* law common to members of the Class, which predominate over any questions affecting any individual members, including, but not limited to, the following:

A.   Whether the "White Dot Defect" constitutes a manufacturing or design defect;

B.   Whether Samsung designed its warranty program to end prior to the manifestation of the "White Dot Defect";

C.   Whether Samsung undertook a course of conduct to hide the existence of the "White Dot Defect" form members of the Class;

D.   Whether Samsung engaged in unfair or deceptive acts and/or practices in violation of the New Jersey Consumer Fraud Act and/or the Acts of Certain Other States;

E.   Whether Samsung was unjustly enriched by their course of conduct;

F.   Whether Plaintiff and Class Members are entitled to compensatory damages, and the measure of such damages; and

G.   Whether Plaintiff and members of the Class have sustained ascertainable losses by reason of Samsung's wrongful course of conduct and, if so, the proper measure of those losses.

25.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the other members of the Class in that Plaintiff's claims arise from the same course of conduct by Defendant toward Plaintiff and other members of the Class.

26.     <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's claims are coextensive with, and not antagonistic to, the claims of the other members of the Class.  Plaintiff is willing and able to vigorously prosecute this action on behalf of the Class, and has retained competent counsel experienced in litigation of this nature.

27.     Plaintiff brings this action under Rule 23(b)(3) because common questions of law and fact stated *supra* predominate over issues that are individual to members of the Class.  The proposed Class is sufficiently cohesive to warrant class and representative treatment.  Upon information and belief, Defendant has the technology and records which would permit Plaintiff a plausible class-wide method for proving his case.  Certification under Rule 23(b)(3) is also appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action.  Given the small damage amounts per Class Member, the expense of litigating each Class Member's claim individually would be so cost prohibitive as to deny Class Members a viable remedy.  Plaintiff envisions no unusual difficulty in the management of this action as a class action.

28.     Plaintiff also brings this action under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to all members of the Class, thereby making final injunctive or declaratory relief concerning the Class as a whole appropriate.  In the absence of appropriate injunctive or declaratory relief, Defendant will continue in its course of conduct.

Defendant's uniform conduct towards Plaintiff and the other members of the Class makes certification under Rule 23(b)(2) appropriate.

## NEW JERSEY'S SUBSTANTIVE LAW APPLIES TO THE PROPOSED NATIONWIDE CLASS

29.     New Jersey's substantive laws apply to the proposed Nationwide Class, as defined herein, because Plaintiff properly brings this Complaint in this District.

30.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiff and the Nationwide Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.  New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by the Plaintiff and all Class members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

31.     Defendant Samsung maintains its principal place of business and U.S. headquarters in Ridgefield Park, New Jersey.  Defendant also operates Meadowlands Distribution, Inc. out of Secaucus, New Jersey.

32.     Defendant also owns property and conducts substantial business in New Jersey, and therefore New Jersey has an interest in regulating Defendants' conduct under its laws. Defendants' decision to reside in New Jersey and avail itself of New Jersey's laws renders the application of New Jersey law to the claims herein constitutionally permissible.

33.     New Jersey is also the location where a significant number of Class members were injured by virtue of the misconduct alleged herein.  A substantial number of members of the proposed Nationwide Class reside in New Jersey and bought Samsung televisions in New Jersey.

34.     New Jersey is also the State from which Defendant's alleged misconduct emanated.  This conduct similarly injured and affected Plaintiff and Class members residing in the United States.  For instance, Defendants' manufactured and/or marketing efforts relating to its televisions were created and/or orchestrated from New Jersey.

35.     The application of New Jersey's laws to the Nationwide Class is also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of Plaintiff and the proposed Nationwide Class, and New Jersey has a greater interest in applying its laws here than any other interested state.

36.     In the alternative, the Court may apply the substantive law of the State where the named Plaintiff resides and sister states with the same applicable laws: California, Florida, Illinois, Michigan, Missouri, New Jersey, New York, and Washington.

## COUNT I
### (Violations of New Jersey Consumer Fraud Act ("CFA") (N.J.S.A. § 56:8-1 *et seq.*)
### Asserted On Behalf Of The Nationwide Class)

37.     Plaintiff repeats the allegations contained in the preceding paragraphs as if fully set forth herein.

38.     Plaintiff and the Class, and Defendant are "persons" within the meaning of the CFA.

39.     Plaintiff and the Class are "consumers" within the meaning of the CFA.

40.     Defendant conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

41.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

14

42.    Defendants have engaged in deceptive practices in the sale of televisions by selling televisions with a defect and intentionally failing to disclose and/or concealing this defect.

43.    Defendant consciously omitted to disclose material facts to Plaintiff and the Class with respect to the defects.

44.    Defendant's unconscionable conduct described herein included the omission and concealment of material facts concerning its televisions.

45.    Defendant's conduct required Plaintiff and the Class to purchase replacement parts and/or new Televisions much sooner than is ordinarily necessary for televisions which possess fitness for purpose.

46.    Defendant's failure to disclose the defective nature of the DLP chip was a material omission.

47.    The foregoing acts, misrepresentations, omissions and unconscionable commercial practices caused Plaintiff and the Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to purchase replacement DLP chips (which also contain the complained of defect) and/or new Televisions, and they are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

48.    Application of the CFA to all Class members located throughout the country, regardless of their state of residence, is appropriate as described herein and because, *inter alia*:

a.    Defendant controlled and directed their nationwide sales operations and support operations from New Jersey;

b.    Defendant's marketing operations and decisions, including the decisions as to how to advertise, promote and sell its televisions were made in New Jersey;

15

c.      Defendant's principal place of business is located in New Jersey;

d.      The majority of significant documents are located in New Jersey;

e.      The facts and circumstances of this case bestow numerous contacts with the State of New Jersey so as to create a state interest in applying the CFA to LG, thereby making application of New Jersey law to the entire Class appropriate.

<u>**COUNT II**</u>
**(Violation of Substantially Similar Consumer Protection Statutes of Certain States)**

49.      Plaintiff repeats the allegations contained in the preceding paragraphs as if fully set forth herein, and pleads this Count in the alternative to Count II.

50.      Defendant's course of conduct as alleged herein violates the substantially similar consumer protection acts ("CPA's") of New Jersey and certain sister states, which prohibit deceptive or unfair acts or practices, as follows:

| State | CPA Prohibitions |
|-------|------------------|
| California | "unlawful, unfair or fraudulent"[3] business acts or practices are prohibited. CAL. BUS. & PROF. CODE § 17200 |
| Florida | "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." FLA. STAT. § 501.204(1) |

---

[3]      A "fraudulent" act under the California Unfair Competition Law (the "UCL") occurs if members of the public are *likely to be deceived*. *Blakemore v. Superior Court*, 129 Cal. App. 4th 36, 49 (2d Dist. 2005)(emphasis added).

| Illinois | "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby" are prohibited.  815 ILCS 505/2 |
|---|---|
| Michigan | "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce" are prohibited.  MICH. COMP. LAWS § 445.903(1) |
| Missouri | "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce… in or from the state of Missouri, is declared to be an unlawful practice…" V.A.M.S. 407.020, subdiv. 1. |
| New Jersey | "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice. . . ." N.J.S.A. § 56:8-2. |
| New York | "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349(a). |
| Washington | "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Wash. Rev. Code § 19.86.020 |

51.     Each of the CPA's cited above prohibits material omissions either expressly or by case law interpreting the statutes.   Each CPA cited above prohibits unfair and deceptive acts or practices, which are similarly defined in court decisions and largely taken from decisions interpreting the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which provides, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."

52.     Defendant's business and its course of conduct including its material omissions about its Televisions were injurious to the public interest.

53.     As set forth above, Defendant engaged in deceptive acts or practices in violation of the foregoing CPA's in that its course of conduct including its material omissions was likely to mislead, or had the tendency or capacity to mislead consumers acting reasonably under the circumstances.

54.     As set forth above, Defendant's course of conduct is also unfair in violation of the foregoing CPA's: Defendant's conduct caused Plaintiff and the Class unjustified injuries which they could not avoid because of Defendant's material omissions; or such actions offend public policy, are immoral, unscrupulous, unethical and offensive, and thereby cause injury to consumers, like Plaintiff and the Class defined above.

55.     Plaintiff has suffered injury in fact and monetary loss as a direct and proximate result of Defendant's conduct in violation of the foregoing CPA's, including but not limited to, the monies paid to purchase replacement parts and/or replacement televisions.  Were it not for Defendant's course of conduct including the omissions set forth in the preceding paragraphs,

reasonable consumers like Plaintiff and the Class would not have purchased Defendant's televisions.

56.     Plaintiff and the Class have suffered ascertainable loss and have been aggrieved as a direct and proximate result of Defendant's course of conduct in violation of the foregoing CPA's, including but not limited to, the monies paid to purchase replacement televisions.

57.     Plaintiff and the Class are entitled to legal and equitable relief for violating the foregoing CPA's, including, as applicable, damages, restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendant as a result of its unlawful course of conduct, and an order enjoining Defendant to cease and desist from engaging in the practices described herein.

## <u>COUNT III</u>
### (Unjust Enrichment)

58.     Plaintiff repeats the allegations contained in the preceding paragraphs as if fully set forth herein.

59.     Plaintiff and the Class have conferred benefits on Defendant by purchasing its Televisions.

60.     Defendant has knowingly and willingly accepted these benefits from Plaintiff and the Class.

61.     Under the circumstances, where Defendant has reaped these benefits by misleading Plaintiff and the Class as to the fitness of its televisions and committing material omissions stated above, it is inequitable for Defendant to retain these benefits at the expense of Plaintiff and the Class.

62.     Defendant has been unjustly enriched at the expense of and detriment of Plaintiff and the Class by wrongfully collecting money to which Defendant, in equity, is not entitled.

63.     Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

64.     Plaintiff and the Class have no adequate remedy at law.

65.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendant of the benefits conferred by Plaintiff and the Class.

WHEREFORE, Plaintiff, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), and (b)(3), and certifying the class defined herein;

B.      Designating Plaintiff as representative of the Class and its counsel as Class counsel;

C.      Entering judgment in favor of Plaintiff and the Class and against Defendant;

D.      Awarding Plaintiff and Class members their damages, including interest thereon;

E.      Awarding Plaintiff and Class Members their and attorneys' fees and costs;

F.      Imposing a constructive trust on amounts wrongfully collected from Plaintiff and the Class members pending resolution of their claims herein;

G.     Compelling Defendant to establish a program to inspect, repair and replace defective televisions;

H.     Compelling Defendant to establish a program to reimburse its warranty claims denied or paid in part, and reimburse Class Members who have had to pay to repair and/or replace defective televisions; and

Granting such further relief as the Court deems just.

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN,
Attorneys for Plaintiffs

By:_____/s/ James E. Cecchi_____
           JAMES E. CECCHI

Date:  November 3, 2009

Of counsel:

Jeffrey A. Leon
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Jonathan Shub
Scott Alan George
SEEGER WEISS
1515 Market Street
Suite 1380
Philadelphia, Pennsylvania 19102
(215) 564-2300

Jim S. Calton, Jr.
CALTON & CALTON
Post Office Box 895
Eufaula, Alabama  36072-0895
(334) 687-3563

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN,
Attorneys for Plaintiffs

By:____/s/ James E. Cecchi_____
       JAMES E. CECCHI

Date:  November 3, 2009

Of counsel:

Jeffrey A. Leon
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Jonathan Shub
Scott Alan George
SEEGER WEISS
1515 Market Street
Suite 1380
Philadelphia, Pennsylvania 19102
(215) 564-2300

Jim S. Calton, Jr.
CALTON & CALTON
Post Office Box 895
Eufaula, Alabama  36072-0895
(334) 687-3563